Whitney Z. Bernstein, SBN 304917
wbernstein@bklwlaw.com
Sandra C. Lechman, SBN 288660
slechman@bklwlaw.com
**BIENERT KATZMAN
LITTRELL WILLIAMS LLP**
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone (949) 369-3700
Facsimile  (949) 369-3701

*Attorneys for Dr. Karim Arabi*

David K. Willingham, SBN 198874
dwillingham@kslaw.com
Blythe G. Kochsiek, SBN 285389
bkochsiek@kslaw.com
**KING & SPALDING LLP**
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone (213) 443-4355
Facsimile  (213) 443-4310

*Attorney for Ali Akbar Shokouhi*

Nicola T. Hanna, SBN 130694
nhanna@gibsondunn.com
Katherine H. Sharp, SBN 273141
ksharp@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, California 90071
Telephone (213) 229-7000
Facsimile  (213) 229-7520

Winston Y. Chan, SBN 214884
wchan@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street, Suite 3000
San Francisco, California 94105
Telephone (415) 393-8200
Facsimile  (415) 393-8306

*Attorneys for Sanjiv Taneja*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>KARIM ARABI, et al.,<br><br>    Defendants. | Case No. 3:22-cr-01152-BAS<br>Honorable Cynthia Bashant<br><br>**JOINT OPPOSITION TO GOVERNMENT'S MOTION FOR PROTECTIVE ORDER**<br><br>Hearing Date:    October 3, 2022<br>Hearing Time:    3:00 p.m. |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

The defendants Karim Arabi, Sanjiv Taneja, and Ali Akbar Shokouhi, by and through their counsel, Whitney Z. Bernstein and Sandra C. Lechman of Bienert Katzman Littrell Williams, LLP; Nicola T. Hanna, Winston Y. Chan, and Katherine H. Sharp of Gibson, Dunn & Crutcher LLP; and Blythe G. Kochsiek and David K. Willingham, King & Spalding LLP; respectively, move this Court to modify the government's proposed protective order in this case by striking paragraphs 5 (a blanket prohibition on showing any discovery materials to Sheida Alan, a co-defendant and critical witness) and 6 (designating certain discovery as attorneys' eyes only) as violating the defendants' Fifth and Sixth Amendment rights. The government has not shown good cause for entry of these restrictive paragraphs, and they should be rejected. However, in the spirit of compromise and to expedite review of discovery, the defendants propose a reasonable alternative to paragraph 5; namely, treating Ms. Alan as any other potential witness in this case by striking paragraph 5 and adding language to paragraph 10 (discussing treatment of discovery with witnesses) that reads, "Consistent with this Order, the Defense may show Sheida Alan discovery materials in the manner approved for other witnesses in accordance with this paragraph." The government has failed to justify rejecting this proposed modification, and indeed, to the extent the Court is inclined to enter any protective order, this is the most severe infringement into defendants' constitutional rights that can be justified based on the government's proffered concerns.

Respectfully submitted,

Dated: September 28, 2022

**BIENERT KATZMAN**
**LITTRELL WILLIAMS LLP**

By: */s/ Whitney Z. Bernstein*
    Whitney Z. Bernstein
    Sandra C. Lechman
    *Attorneys for Dr. Karim Arabi*

## I. INTRODUCTION

The government's proposed protective order should be modified to strike the blanket prohibition on showing discovery to Ms. Alan (paragraph 5) and the designation of any discovery as for attorneys' eyes only (paragraph 6) because these paragraphs violate the defendants' Fifth Amendment right to due process of law and Sixth Amendment right to present a defense. The government has not shown any good cause for entry of these restrictive paragraphs. However, in the spirit of compromise and to expedite review of discovery, the defendants instead propose adding to the paragraph regarding witnesses (paragraph 10) language that reads, "Consistent with this Order, the Defense may show Sheida Alan discovery materials in the manner approved for other witnesses in accordance with this paragraph." By this modification, Ms. Alan is treated the same as any other potential witness in this case. The government has rejected this reasonable compromise during meet and confer negotiations, claiming that its interests in trying to ensure that Ms. Alan is denied access to any material that might conceivably aid her defense to extradition in Canada trumps defendants' right to adequately prepare for trial before this Court. The government's position is without merit.

The total ban on showing Ms. Alan discovery in the manner allowed for other witnesses impermissibly interferes with defendants' ability to adequately prepare for trial. Paragraph 5 of the proposed protective order prohibits the defense from "shar[ing], disclos[ing], or show[ing] in any manner any discovery materials to Sheida Alan . . . or to her counsel, counsel's staff, investigators, consultants or experts" prior to her arraignment in this case. But as the government concedes, Ms. Alan is not only a defendant in this case, she is also a critical witness. The government's entire case rests on the allegation that the defendants fraudulently represented Ms. Alan as the inventor of technology actually developed by her brother, Karim Arabi. The government contends that the defendants hid Dr. Arabi's role in the development of this technology when selling the technology to Qualcomm. The defendants cannot defend this case without being able to freely confer with Ms. Alan – the critical witness. Indeed, the defendants before this Court are simply asking

to *show* Ms. Alan and her counsel certain discovery, not provide them with copies. The only basis for the government's proposed blanket prohibition on sharing any discovery with Ms. Alan is its speculative and unfounded assumption that Ms. Alan will surreptitiously make a copy of certain discovery. Yet, the government has no basis to make such an assumption, which necessarily treats Ms. Alan differently than every other witness who is allowed to be shown documents under the proposed protective order but are barred from keeping them. And, tellingly, the government does not cite a single case that permits such differential treatment based on mere speculation or allows such differential treatment to trump defendants' rights to prepare their defenses.

Additionally, unlike the cases cited by the government, Ms. Alan is not injecting herself in this case and requesting discovery; rather the defendants before the Court seek to use the discovery to prepare for trial. Thus, the fugitive disentitlement doctrine is inapplicable. Simply put, the government's speculative concerns about Ms. Alan seeing the discovery and somehow using it to potentially fight extradition cannot outweigh the defendants' absolute constitutional right to prepare a defense. A wholesale ban on showing Ms. Alan discovery hinders defendants' ability to prepare their defense in violation of their Fifth and Sixth Amendment rights.

The Court also should not designate any discovery as attorneys' eyes only as requested in paragraph 6 of the proposed protective order. The discovery that the government proposes to label attorneys' eyes only stems from a civil suit filed by Qualcomm in 2017. Though Qualcomm settled the case with Dr. Arabi, Ms. Alan, and Mr. Taneja, Qualcomm also apparently instigated this prosecution, referring the matter to the government for criminal prosecution of the identical claims settled and released in the civil case. As such, Qualcomm and the government had *years* to review and clear this evidence, and Qualcomm well understood that any relevant material would have to be disclosed to the defense. Regardless, the defendants are entitled to see all the discovery against them. Furthermore, defense counsel will need their clients to review this highly technical evidence and contribute their knowledge, expertise, and perspective on that evidence to aid in the

preparation of the defense. The government and Qualcomm's concerns do not take precedence over defendants' constitutional rights to due process and a competent defense.

Accordingly, the Court should decline to enter the government's proposed protective order as written and instead should: 1) strike paragraph 5 in its entirety; 2) modify paragraph 10 to include the following language: "Consistent with this Order, the Defense may show Sheida Alan discovery materials in the manner approved for other witnesses in accordance with this paragraph"; and 3) strike paragraph 6 relating to "attorneys' eyes only" restrictions.

## II.   PROCEDURAL AND FACTUAL BACKGROUND

All the defendants in this case have been arrested. Karim Arabi, Sanjiv Taneja, and Ali Akbar Shokouhi (collectively, the "arraigned defendants"), were all arrested in the United States, were arraigned on the Indictment, and have been released on bail. Ms. Alan was arrested in Canada (where she lives and has citizenship) and obtained counsel in Canada. She was released on bond in Canada, pending extradition. She has appeared as required in court and is abiding by the conditions of her release.

None of the defendants have received any discovery in this case. The government estimates that the first round of discovery will be approximately 270,000 pages, with larger productions to follow.

Counsel for the arraigned defendants and government counsel met and conferred on multiple occasions regarding the proposed protective order. While the parties were able to come to agreement on much of the language in the proposed protective order, the parties were unable to reach an agreement on the total ban on showing any discovery to Ms. Alan (paragraph 5) and the designation of discovery as for attorneys' eyes only (paragraph 6).

The defense is not categorically opposed to a protective order and has, indeed, agreed to much of the government's proposed language. However, these two paragraphs are unduly restrictive and burdensome and violate the arraigned defendants' constitutional rights. While the government fails to mention it in its motion, the defendants proposed a compromise to paragraph 5, namely, treating Ms. Alan the same as any other witness in the case by adding the following language to paragraph 10 (dealing with witnesses generally):

"Consistent with this Order, the Defense may show Sheida Alan discovery materials in the manner approved for other witnesses in accordance with this paragraph." The government refused the compromise. While recognizing that Ms. Alan is a critical witness in the case, and the defendants have an obvious need to speak with her to prepare for trial, the government asserts that its desire for Ms. Alan's swift extradition – and the speculative concern that if she is shown any discovery, she might use it to fight extradition – trumps defendants' legitimate rights in this case. In short, the government seeks to hobble the defense – which would be prohibited even from showing Ms. Alan an email she purportedly wrote – in order to influence the extradition proceedings in Canada.

### III. THE COURT MUST STRIKE THE BLANKET PROHIBITION ON SHOWING MS. ALAN DISCOVERY AND THE DESIGNATION OF ANY DISCOVERY AS FOR ATTORNEYS' EYES ONLY

Under Federal Rule of Criminal Procedure 16(d), the government must demonstrate "good cause" to regulate discovery with a protective order. Fed. R. Crim. P. 16(d). "Good cause is established on a showing that disclosure will work a clearly defined and serious injury . . . ." *United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007). "The injury must be shown with specificity." *Id*. "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." *Id*. (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994). "The good cause determination must also balance the public's interest in the information against the injuries that disclosure would cause." *Wecht*, 484 F.3d at 211.

Although the Ninth Circuit has not provided a definition of "good cause" in criminal cases, courts refer to Fed. R. Civ. P. 26(c) to assess a claim of good cause pursuant to Fed. R. Crim. P. 16(d). *See United States v. Arredondo*, 2012 WL 1946955, *1 (D.Ariz. May 30, 2012) (citing *United States v. Patkar*, 2008 WL 233062, *4 (D.Haw. Jan. 28, 2008)). In that civil context, the Ninth Circuit has ruled that "[a] party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003) (citing *San Jose Mercury News, Inc. v. U.S.*

*District Court*, 187 F.3d 1096, 1102 (9th Cir. 1999)). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Ind., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (citing *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3rd Cir. 1986)). The issuance of a protective order cannot occur until and unless there is a sufficient showing, but *even if* such a showing is established, a court is left to exercise its discretion in determining whether to issue a protective order. *See* 2 Charles Alan Wright *et al.*, Federal Practice & Procedure Criminal § 262 (4th ed. 2013).

Here, although the arraigned defendants are willing to submit to a reasonable protective order, the government has failed to show good cause for totally barring the defense from showing Ms. Alan discovery and for designating any discovery as attorneys' eyes only.

### A. Completely Barring the Defense from Showing Discovery to a Critical Witness in the Case Violates the Defendants' Fifth and Sixth Amendment Rights.

The arraigned defendants have the constitutional right, through the Fifth and Sixth Amendments, to present a competent, effective, and vigorous defense. To enable effective and constitutionally mandated investigation, preparation, and presentation of that defense, the defense must be permitted to confer with the critical witness and alleged co-conspirator in this case – Ms. Alan – and to show and discuss discovery with her. Paragraph 5 of the proposed protective order unduly restrains the arraigned defendants' ability to investigate and defend this case.

During meet and confer negotiations, the government insisted on a complete bar prohibiting the defense from showing any discovery to Ms. Alan. The defense explained that any language in the protective order preventing the display of documents to the key witness unduly handicaps and prejudices the defense.

At the heart of this case is the government's allegation that Dr. Arabi was the true inventor of technology sold to Qualcomm. The government contends that the "defendants carefully hid [Dr. Arabi]'s role, and instead described Abreezio's new technology as the invention of [Dr. Arabi]'s sister, [Ms. Alan]." Government's Motion for Protective Order,

Dkt. No. 76 at 3. For example, in conversations with the government, the government claimed that certain emails sent in Ms. Alan's name were in fact written by Dr. Arabi. The government further claimed that certain documents purportedly prepared and signed by Ms. Alan were in fact prepared and signed by Dr. Arabi. Dr. Arabi must freely confer with Ms. Alan and her counsel about such documents and allegations to have a chance at defending against these untrue allegations.

Ms. Alan can review emails or forms and point to quirks that reveal her authorship. For example, she may be able to identify a specific font that she generally uses or a particular turn of phrase. Ms. Alan can provide context and background on the relevant emails and documents that confirm her authorship. The arraigned defendants cannot begin investigation and preparation of a defense in this extremely large, complex, and highly technical case without her knowledge as a witness. As a result, this case will flounder in the Court's docket as the defense will be continually unprepared to proceed with the case until the arraigned defendants can fully confer with the central witness to the case.[1]

"[T]he [c]ourt should consider how burdensome a protective order would be on [defendants], being particularly sensitive to the extent to which a protective order would hinder their efforts to defend themselves at trial." *Smith*, 985 F. Supp. 2d 506, 544 (S.D.N.Y. 2013). "No right ranks higher than the right of the accused to a fair trial." *Press-Enterprise Co. v. Super. Ct. of Cal., Riverside Cnty.*, 464 U.S. 501, 508 (1984).

Further, as the government concedes, Ms. Alan has seen and likely currently has access to much of the discovery by virtue of the parallel civil suit brought by Qualcomm, which dealt with the exact same conduct.[2] The government's proffered concerns are therefore confusing, as the discovery that they hope to keep from her is not new to her and may already be in her possession.  For much of the discovery, the only difference between what the

---

[1] Based on the collective experience of defense counsel, it is not uncommon for extradition proceedings in Canada to last several years.

[2] Similarly, the government has no objection to the defense discussing the contents of the documents with Ms. Alan.

government will produce and what Ms. Alan may already have is a bates stamp number.

Ms. Alan is the critical witness to the charges against the arraigned defendants and the defense simply cannot attempt to defend this case without being able to confer freely with her. Though no restriction whatsoever is justifiably imposed, the defense is only asking that Ms. Alan be treated as any other witness in this case and abide by the same restrictions set forth in paragraph 10 in the proposed protective order.

### 1. Ms. Alan is not a Fugitive, and the Fugitive Disentitlement Doctrine Does Not Apply.

The government argues that this wholesale ban on showing discovery to Ms. Alan is appropriate based on the fugitive disentitlement doctrine. This argument fails. Ms. Alan is not a fugitive. Moreover, the government does not cite a single case for the proposition that the fugitive disentitlement doctrine can be leveraged against the constitutional rights of non-fugitive criminal defendants.

"The fugitive disentitlement doctrine is a severe sanction" that courts should "not lightly impose." *Bhasin v. Gonzales*, 423 F.3d 977, 987 (9th Cir. 2005) (quoting *Antonio-Martinez v. INS*, 317 F.3d 1089, 1091 (9th Cir. 2003)) (internal quotations omitted). This doctrine is intended to "punish those who evade the reach of the law." *Antonio-Martinez*, 317 F.3d at 1092. "The paradigmatic object of the doctrine is the convicted criminal who flees. . ." *Id*. at 1092.

"Whether a defendant is a fugitive is a question of fact involving two elements: (1) absence from the jurisdiction; and (2) intent to avoid arrest or prosecution. Mere absence . . . does not necessarily make a defendant a fugitive. Instead, to be a fugitive the defendant must have left with the intent to avoid prosecution." *United States v. Nabepanha*, 200 F.R.D. 480, 482 (S.D. Fla. 2001). Federal courts rely on the definition of fugitive that originated with the interpretation of 18 U.S.C. § 3290. *Id.* 18 U.S.C. § 3290 states that "no statute of limitations shall extend to any person fleeing from justice." 18 U.S.C. § 921 defines a fugitive as "any person who has fled from any State to avoid prosecution for a crime or to avoid giving testimony in any criminal proceeding."

Unlike the cases cited by the government, Ms. Alan submitted herself to arrest in Canada, her home and country of citizenship. Ms. Alan acquired Canadian counsel promptly and properly submitted herself to preliminary and detention related proceedings as required there. Ms. Alan has made no attempt to avoid arrest or prosecution. It is unknown at this time whether Ms. Alan will fight extradition, as is her right, so the government's implication that she may be a properly defined fugitive should she later decide to fight extradition is inapplicable. The government attempts to paint Ms. Alan as avoiding the jurisdiction of the Court, but that is not so. She is simply following the necessary legal proceedings in her home country. In its application, the government claims to be concerned about the misuse of the discovery by Ms. Alan or her counsel, but this is entirely speculative and not grounded in any evidence whatsoever. Further, the government's claim that Ms. Alan or her counsel would have a "strong incentive to misuse" the discovery is baseless, seemingly intended only to malign Ms. Alan in this Court.

As noted by the government, the fugitive disentitlement doctrine is intended to prevent criminal defendants from both having discovery in the case against them while also avoiding prosecution, which they characterize as "heads I win, tails you lose" in a fugitive's favor. The situation here is entirely different. Ms. Alan is not requesting the discovery herself, so there is nothing from which to disentitle her. The arraigned defendants are asking only for the compromise position of being able to treat her as any other witness under the protective order. The arraigned defendants will not provide Ms. Alan with hard copies of any discovery or disclose to her materials unnecessary to defense preparations. The arraigned defendants have constitutional rights to a competent defense, and counsel are trying to meet their obligations without further undue delay.

The government's proposed procedure whereby the defense may seek a modification of the protective order in the future, should the defense determine that "preparing the parties' defense requires showing a subset of the materials" to Ms. Alan, is unworkable and would only further the constitutional violations created by this wholesale ban. First, this proposal inverts the legal standard for a showing of good cause by the party seeking the

protective order. It is the government's burden to show good cause to restrict the use of the discovery in this way. It is not the defense's job to show good cause why they can competently investigate a criminal case using the relevant discovery. Second, this procedure would provide the government with a sneak preview into the defense strategy and themes. Third, requiring the defense to seek, on a document-by-document basis, a determination whether a specific document can be shown to Ms. Alan is unduly burdensome for the defense and the Court. In addition to these three issues, the Court would be in no better position at that time to decide whether the defense can share any such subset of documents. The government would continue to argue that they cannot be shared under the fugitive disentitlement doctrine, and there is no legal standard or criteria for the Court to use in deciding whether the defense could display that subset. This proposed procedure is not legally viable and is unduly burdensome for the Court and for the defense.

The defendants' constitutional rights to due process and a competent defense outweigh any concern the government has about the sharing of discovery with Ms. Alan.

### B. The Designation of Any Discovery as For Attorneys' Eyes Only is Unwarranted and Unduly Burdensome.

The government seeks to designate some 10,000 pages of discovery as "attorneys' eyes only." The government argues that these documents consist primarily of technical information about Qualcomm. The government argues, in part, that Qualcomm has concerns about Dr. Arabi disseminating this information to others working in this technical field outside of Qualcomm.

As an initial matter, the government first sent the proposed protective order to Dr. Arabi on August 18, 2022, which was 41 days ago. If Dr. Arabi had agreed to that protective order on that date, the government would have only 19 days before the expiration of the sunset clause. There is no reason to restart that clock now. Second, the discovery that the government seeks to designate as attorneys' eyes only is discovery that has been in the possession of Qualcomm since at least 2017. Though Qualcomm settled the case with Dr. Karim, Ms. Alan, and Mr. Taneja, Qualcomm also referred the matter to the government

for criminal prosecution of the identical claims settled and released in the civil case. As such, the company has had ample time to review and clear these documents. Further delay is unwarranted, and the government has made no showing to justify continued delays. Moreover, the tech world moves very quickly; after so many years, any technological information in these documents is likely now irrelevant and outdated in the field. Third, by the government's own admission, these documents are of a highly technical nature. Defense counsel cannot, on their own, understand and contextualize them without the assistance of the defendants.

The government acknowledges that they expect the designation to be withdrawn for many of the documents, and that Qualcomm would otherwise need a compelling reason for maintaining the designation over the documents. Given the age of the documents, the technical nature of the documents is not, by itself, a compelling reason to maintain the designation. The arraigned defendants are entitled to see these documents without interference by Qualcomm. The government and Qualcomm's concerns do not defeat the defendants' due process rights.

## IV.   CONCLUSION

The arraigned defendants are willing to submit to a protective order. However, paragraphs 5 and 6 of the proposed protective order violate the defendants' Fifth and Sixth Amendment rights. The defense has proposed a compromise to paragraph 5, and the government has offered no legitimate reason why this compromise is unreasonable. Further, paragraph 6 should be stricken it its entirety. There is simply no reason why Qualcomm, which sued three of the defendants in 2017 and, after settling and releasing them, instigated this prosecution, should be allowed to bar the defendants from seeing any discovery in this case.

|   |   |
|---|---|
|   | Respectfully submitted, |
| Dated: September 28, 2022 | **BIENERT KATZMAN LITTRELL WILLIAMS LLP** |
|   | By: */s/ Whitney Z. Bernstein* |
|   |     Whitney Z. Bernstein |
|   |     Sandra C. Lechman |
|   |     *Attorneys for Dr. Karim Arabi* |
| Dated:  September 28, 2022 | **GIBSON, DUNN & CRUTCHER LLP** |
|   | By:  */s/ Winston Y. Chan* |
|   |     Nicola T. Hanna |
|   |     Winston Y. Chan |
|   |     Katherine H. Sharp |
|   |     *Attorneys for Sanjiv Taneja* |
| Dated:  September 28, 2022 | **KING SPALDING LLP** |
|   | By:  */s/ David K. Willingham* |
|   |     David K. Willingham |
|   |     Blythe Kochsiek |

### CERTIFICATE OF AUTHORIZATION TO SIGN SIGNATURE

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures of the United States District Court for the Southern District of California, I certify that the content of this document is acceptable to all counsel for the Plaintiff and codefendants' counsel and that I have obtained authorization from each attorney to affix his or her electronic signature to this document.

Dated: September 28, 2022               */s/ Whitney Z. Bernstein*
                                        Whitney Z. Bernstein

# CERTIFICATE OF SERVICE

Counsel for Defendant Karim Arabi certifies that the foregoing pleading has been electronically served on the following parties by virtue of their registration with the CM/ECF system:

Nicola T. Hanna
nhanna@gibsondunn.com
Winston Y. Chan
wchan@gibsondunn.com
Katherine H. Sharp
ksharp@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
*Attorneys for Sanjiv Tanej*

David K. Willingham
dwillingham@kslaw.com
Blythe Kochsiek
bkochsiek@kslaw.com
KING SPALDING LLP
*Attorneys for Ali Akbar Shokouhi*

Nicholas W. Pilchak
nicholas.pilchak@usdoj.gov
Eric R. Olah
eric.olah@usdoj.gov
Meghan Elizabeth Heesch
meghan.heesch@usdoj.gov
ASSISTANT UNITED STATES ATTORNEYS

Dated: September 28, 2022          */s/ Whitney Z. Bernstein*
                                   Whitney Z. Bernstein