GIBSON, DUNN & CRUTCHER LLP
NICOLA T. HANNA, SBN 130694
  NHanna@gibsondunn.com
KATHERINE H. SHARP, SBN 273141
  KSharp@gibsondunn.com
JAMES N. ROTSTEIN, SBN 305072
  JRotstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

WINSTON Y. CHAN, SBN 214884
  WChan@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, California 94105
Telephone: 415.393.8200
Facsimile: 415.393.8306

*Attorneys for Sanjiv Taneja*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KARIM ARABI, SHEIDA ALAN, SANJIV TANEJA, AND ALI AKBAR SHOKOUHI,<br><br>Defendants. | CASE NO. 3:22-cr-01152-BAS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT SANJIV TANEJA'S MOTION TO DISMISS COUNTS ONE AND FOUR OF THE SUPERSEDING INDICTMENT AS IMPERMISSIBLY DUPLICITOUS**<br><br>Date: December 5, 2022<br>Time: 2:00 P.M.<br>Dept: Courtroom 4B<br>Judge: Honorable Cynthia Bashant |

# TABLE OF CONTENTS

**Page(s)**

I.   INTRODUCTION ................................................................................................1
II.  SUMMARY OF RELEVANT ALLEGATIONS AND FACTS .........................2
     A.   Count One: Wire Fraud Conspiracy ........................................................2
     B.   Count Four: Wire Fraud ..........................................................................3
     C.   Mr. Taneja's Settlement In The Civil Action ..........................................4
III. ARGUMENT .......................................................................................................4
     A.   Count One Is Duplicitous Because It Alleges Two Separate Conspiracies ............................................................................................6
          1.   Nature of the Scheme .....................................................................8
          2.   Commonality of Time ....................................................................9
          3.   Identity of Participants and Quality, Frequency, and Duration of Each Conspirator's Transactions ...............................10
          4.   Commonality of Goals .................................................................10
     B.   Count Four Is Duplicitous Because It Alleges Two Separate Schemes .................................................................................................11
IV.  CONCLUSION .................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Grunewald v. United States*,
    353 U.S. 391 (1957) ................................................................................. 6, 7, 12

*United States v. Aguilar*,
    756 F.2d 1418 (9th Cir. 1985) ...................................................................... 1, 5, 6

*United States v. Covington*,
    395 U.S. 57 (1969) ........................................................................................... 5

*United States v. Durades*,
    607 F.2d 818 (9th Cir. 1979) ........................................................................... 10

*United States v. Gordon*,
    844 F.2d 1397 (9th Cir. 1988) ................................................................. 5, 6, 7, 8, 9

*United States v. Hardy*,
    762 F.Supp. 1403 (D. Haw. 1991) ..................................................................... 5

*United States v. Shortt Accountancy Corp.*,
    785 F.2d 1448 (9th Cir. 1986) ......................................................................... 5, 10

*United States v. UCO Oil Co.*,
    546 F.2d 833 (9th Cir. 1976) ............................................................................. 6

*United States v. Zemek*,
    634 F.2d 1159 (9th Cir. 1980) ........................................................................... 6

**Rules**

Fed.R.Crim.P. 12(b)(3)(B) ....................................................................................... 5

Fed.R.Crim.P. 12(b)(3)(B)(i) .................................................................................... 5

Fed.R.Crim.P. 12(d) ................................................................................................. 5

## I.   INTRODUCTION

The Sixth and Fifth Amendments guarantee a defendant's right to knowledge of the charges against him and protection against double jeopardy.  Both of these rights are violated when an indictment charges two offenses in the same count (duplicity) because conviction on a duplicitous count could be obtained without a unanimous verdict as to each of the offenses contained in the count, and ambiguity regarding the parameters of an offense creates a risk of double jeopardy.  *United States v. Aguilar*, 756 F.2d 1418, 1420 n.2 (9th Cir. 1985).  Here, Counts One and Four of the Superseding Indictment are impermissibly duplicitous and therefore must be dismissed.

Count One of the Superseding Indictment, which charges all defendants with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, is duplicitous because it alleges two separate conspiracies:  (1) an initial conspiracy between Defendants Dr. Karim Arabi ("Dr. Arabi"), Sheida Alan ("Ms. Alan"), Ali Akbar Shokouhi ("Mr. Shokouhi"), and Sanjiv Taneja ("Mr. Taneja") with the alleged purpose of fraudulently obtaining millions of dollars from Qualcomm Technologies, Inc. ("Qualcomm") by selling it technology without disclosing material facts; and (2) a subsequent and separate conspiracy between a subset of the defendants—not including Mr. Taneja—to allegedly provide false information during civil litigation arising more than two years after the object of the first conspiracy was achieved, *i.e.*, two years after the Qualcomm deal closed.  The fact that the conspiracies had separate objectives and participants, were performed two years apart, and the participants did not share the same goals establishes that a single overall agreement did not exist; instead, two conspiracies have been alleged.  Indeed, the Superseding Indictment ignores the critical fact that Mr. Taneja entered into an early settlement of the civil litigation with Qualcomm, which released its claims against Mr. Taneja ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

Count Four of the Superseding Indictment, which charges Mr. Taneja with wire fraud in violation of 18 U.S.C. § 1343, is duplicitous for the same reasons as Count One.  Count Four relies entirely on the same allegations set forth in Count One and therefore

impermissibly combines into one count two separate alleged schemes with entirely distinct objectives.

Since Counts One and Four of the Superseding Indictment each impermissibly combine two separate alleged schemes, they should both be dismissed on the basis of duplicity pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(i).

## II. SUMMARY OF RELEVANT ALLEGATIONS AND FACTS

On July 19, 2022, the government filed a Superseding Indictment charging Sanjiv Taneja with one count of wire fraud conspiracy in violation of 18 U.S.C. § 1349, one count of wire fraud in violation of 18 U.S.C. § 1343, and one count of engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. §1957. *See generally* Dkt. No. 9. On August 29, 2022, Mr. Taneja was arraigned on the charges and pled not guilty. *See* Dkt. No. 51.

### A. Count One: Wire Fraud Conspiracy

In Count One (alleging wire fraud conspiracy in violation of 18 U.S.C. § 1349), the government alleges that beginning no later than October 2014 and continuing up to at least June 2018, Mr. Taneja along with defendants Dr. Arabi, Ms. Alan, and Mr. Shokouhi, knowingly and intentionally conspired with each other to devise a scheme to obtain money and property by means of materially false and fraudulent pretenses and representations in violation of 18 U.S.C. § 1343. Dkt. No. 9 ¶ 13.

The Superseding Indictment alleges it was "the purpose of the conspiracy" that defendants Dr. Arabi, Ms. Alan, Mr. Shokouhi, and Mr. Taneja "would and did fraudulently obtain tens of millions of dollars from [Qualcomm] by selling it valuable [Design for Test ('DFT')] technology nominally owned by new technology start-up Abreezio, LLC ('Abreezio') while concealing from [Qualcomm]" allegedly material facts. Dkt. No. 9 ¶ 14.

A year after the conspiracy allegedly began, on October 30, 2015, Qualcomm purchased Abreezio and its DFT technology for approximately $150 million. Dkt. No. 9 ¶ 11. As part of the sales terms, Qualcomm paid approximately $10 million to Mr.

Taneja, *id.*, who was hired as the Chief Executive Officer of Abreezio in January 2015. Qualcomm also paid over $91 million to Ms. Alan, and over $24 million to two companies allegedly controlled by Mr. Shokouhi. *Id.*

Two years after the deal closed, on October 26, 2017, Qualcomm filed a civil lawsuit against Dr. Arabi, Ms. Alan, and Mr. Taneja, alleging fraud and other claims stemming from the Abreezio sale (the "Civil Action"). *See* Dkt. No. 9 ¶ 15(v); Declaration of Brian M. Lutz ("Lutz Decl.") ¶ 2. Mr. Shokouhi was not a named defendant in the Civil Action.

Count One includes a series of overt acts allegedly carried out "[i]n further[ance] of the scheme" to "obtain tens of millions of dollars" from Qualcomm. Dkt. No. 9. ¶¶ 13, 14, 16. The charge then tacks on a secondary alleged scheme, namely that Dr. Arabi and Ms. Alan allegedly submitted false and misleading discovery responses and produced a falsified handwritten notebook in the Civil Action. *See id.* ¶¶ 15(v), (w). The last four overt acts alleged are: (1) On or about October 30, 2015, the defendants caused Qualcomm to issue wire transfers totaling over $150 million to the defendants in exchange for the purchase of Abreezio (*id.* ¶ 16(ff)); (2) on November 1, 2015, Mr. Taneja sent an email in a further effort to conceal material facts related to the DFT technology (*id.* ¶ 16(gg)); (3) more than two years later, on January 16, 2018, Dr. Arabi served false and misleading responses to interrogatories in the Civil Action (*id.* ¶ 16(hh)); and (4) more than five months after that, on June 22, 2018, Dr. Arabi and Ms. Alan produced a falsified notebook in the Civil Action (*id.* ¶ 16(ii)).

B.   **Count Four: Wire Fraud**

Count Four of the Superseding Indictment charges Mr. Taneja with wire fraud in violation of 18 U.S.C. § 1343. In Count Four, the government again alleges that Mr. Taneja (along with defendants Dr. Arabi, Ms. Alan, and Mr. Shokouhi) knowingly and intentionally devised a scheme to obtain money and property by means of materially false and fraudulent pretenses and representations in violation of 18 U.S.C. § 1343. Dkt. No. 9 ¶ 18. The government further alleges that "[a]s part of the scheme to defraud"—

which purportedly occurred during the same timeframe as the alleged conspiracy, *i.e.*, beginning no later than October 2014 and continuing up to at least June 2018—the defendants "utilized the Manner and Means described" in Count One. *Id.* ¶¶ 18–19. Finally, the government alleges that on October 30, 2015, "for the purpose of executing the aforesaid scheme," the defendants caused the funds resulting from the sale of DFT technology to Qualcomm to be transferred by wire to their bank accounts. *Id.* ¶ 20. There are no allegations in Count Four not previously included in Count One.

### C.  Mr. Taneja's Settlement In The Civil Action

Qualcomm filed the Civil Action against Dr. Arabi, Ms. Alan, and Mr. Taneja on October 26, 2017. *See* Dkt. No. 9 ¶ 15(v); Lutz Decl. ¶ 2. As early as January 4, 2018, counsel for Mr. Taneja in the Civil Action began discussing settlement terms with counsel for Qualcomm. Lutz Decl. ¶ 3. Counsel for Qualcomm sent a draft settlement to Mr. Taneja's civil counsel on January 15, 2018. *Id.* ¶ 4. The settlement agreement was executed by Qualcomm and Mr. Taneja on January 26, 2018. *Id.* ¶ 5. Thus, Mr. Taneja had already initiated settlement discussions with Qualcomm before the last two overt acts in the Superseding Indictment regarding alleged falsehoods by Dr. Arabi and Ms. Alan in the Civil Action, and he was out of the case entirely before the final alleged overt act.

Under the terms of the settlement agreement, (1) Qualcomm released its claims against Mr. Taneja related to the matters at issue in the Civil Action; ██████

██████
██████
██████
██████
██████
██████  Lutz Decl. ¶ 6.

### III.  ARGUMENT

Defendants must raise defenses and objections to an indictment on the basis that

it is defective prior to trial or else the objection is waived. Fed.R.Crim.P. 12(b)(3)(B); *see also United States v. Gordon*, 844 F.2d 1397, 1400 (9th Cir. 1988). A "court must decide every pretrial motion before trial unless it finds good cause to defer a ruling." Fed.R.Crim.P. 12(d). A defense is appropriate for pretrial consideration when trial "would be of no assistance in determining [its] validity." *United States v. Covington*, 395 U.S. 57, 60 (1969); *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986). "A pretrial motion is generally capable of determination before trial if it involves questions of law rather than fact;" however, "a district court may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motions so long as the court's findings on the motion do not invade the province of the ultimate finder of fact." *Shortt Accountancy Corp.*, 785 F.2d at 1452 (internal quotation marks omitted). To elaborate, "[a]s the ultimate finder of fact is concerned with the general issue of guilt, a motion requiring factual determinations may be decided before trial if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." *Id.* (internal quotation marks omitted).

Defects in an indictment include "joining two or more offenses in the same count (duplicity)." Fed.R.Crim.P. 12(b)(3)(B)(i). To avoid prejudice and preserve defendants' constitutional rights, courts are empowered to dismiss duplicitous counts from an indictment. *See United States v. Hardy*, 762 F.Supp. 1403, 1410 (D. Haw. 1991). As an alternative, courts can also order that a duplicitous count be divided into separate counts. *See Gordon*, 844 F.2d at 1400. Failure to formally amend an indictment that includes a duplicitous count creates a risk of reversible error. *Aguilar*, 756 F.2d at 1423–24 (finding error where in response to challenge that count was duplicitous, government made oral election to proceed under only one clause of the count and treat the second clause as surplusage, but the indictment was never formally amended and defendant was ultimately convicted on both counts).

As explained by the Ninth Circuit, the "vices of duplicity" include: (1) "breaches

of the defendant's Sixth Amendment right to knowledge of the charges against him, since conviction on a duplicitous count could be obtained without a unanimous verdict as to each of the offenses contained in the count;" (2) "eviscerat[ion of] the defendant's Fifth Amendment protection against double jeopardy, because of a lack of clarity concerning the offense for which he is charged or convicted;" and (3) "problems regarding the admissibility of evidence, including its admissibility against one or more codefendants." *Aguilar*, 756 F.2d at 1420 n.2; *United States v. UCO Oil Co.*, 546 F.2d 833, 835 (9th Cir. 1976).

Here, Count One must be dismissed because it alleges two separate conspiracies and Count Four must be dismissed because it alleges two separate fraudulent schemes. Therefore, both counts are duplicitous.

### A. Count One Is Duplicitous Because It Alleges Two Separate Conspiracies

An indictment that charges two separate conspiracies in a single count is duplicitous. To distinguish a single conspiracy from multiple conspiracies, the Ninth Circuit looks at "whether there was one overall agreement among the various parties to perform various functions in order to carry out the objectives of the conspiracy." *Gordon*, 844 F.2d at 1401 (citations omitted). The relevant factors in determining the existence of an "overall agreement" include the nature of the scheme; the commonality of times; the identity of the participants; the commonality of goals; and the quality, frequency, and duration of each conspirator's transactions. *Id.*; *see also United States v. Zemek*, 634 F.2d 1159, 1168 (9th Cir. 1980).

An agreement to conceal a conspiracy after the main objective has been achieved is ordinarily a separate conspiracy. *See Grunewald v. United States*, 353 U.S. 391, 402, 404, 406 (1957). Efforts to conceal a conspiracy after the fact are part of the main conspiracy's scheme only if as part of the original conspiratorial agreement, the conspirators expressly agreed to continue to act in concert after the purpose of the conspiracy was accomplished in order to cover up traces of the crime. *See id.* at 402, 404, 406. "Acts of covering up, even though done in the context of a mutually

understood need for secrecy, cannot themselves constitute proof that concealment of the crime after its commission was part of the initial agreement among the conspirators." *Id.* at 402.

Recognizing that "every conspiracy will inevitably be followed by actions taken to cover the conspirator's traces," the Supreme Court refused to "accede to the proposition that the duration of a conspiracy can be indefinitely lengthened merely because the conspiracy is kept a secret, and merely because the conspirators take steps to bury their traces, in order to avoid detection and punishment after the central criminal purpose has been accomplished." *Grunewald*, 353 U.S. at 402, 404, 405 (holding that conspiracy count was barred by the statute of limitations because there was no "express original agreement among the conspirators to continue to act in concert in order to cover up, for their own self-protection, traces of the crime after its commission," *i.e.*, no agreement to conceal the conspiracy after its main objective was accomplished was shown or could be implied to have been part of the original conspiratorial agreement). For this reason, it is vital that a distinction be drawn between acts of concealment done in furtherance of the main criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been attained for the purpose only of covering up after the crime. *Id.* at 405.

In *United States v. Gordon*, the indictment alleged in one count that two defendants conspired to defraud the United States by using inside information to secure government contracts in return for payoffs and to obstruct the grand jury investigation into that wrongdoing. *Gordon,* 844 F.2d at 1401. Focusing on the nature of the scheme, the Ninth Circuit held that there were two separate conspiracies:

> The primary agreement between [defendants] was to use inside information to secure government contracts … in return for payoffs. The evidence does not show that the parties contemplated or discussed any plans for a coverup. We cannot imply a subsidiary conspiracy to conceal the crime…. The conspiracy to obstruct justice was pursuant to a separate agreement, made after [one of the defendants] was subpoenaed by the grand jury.

*Id.* The court also noted that the commonality-of-time factor indicated there were two

Gibson, Dunn & Crutcher LLP

7                                3:22-cr-01152-BAS
MEMORANDUM OF POINTS AND AUTHORITIES

separate conspiracies—the last kickback transaction occurred in August–September 1983 while the conspiracy to obstruct the grand jury investigation did not begin until after one of the defendants was subpoenaed in March of 1984. *Id.* In *Gordon*, the Ninth Circuit ultimately reversed the defendants' convictions, holding that the district judge erred in failing to cure the risk of a non-unanimous verdict resulting from the duplicitous indictment. *Id.* at 1402–03.

Applying the factors analysis here, the allegations in Count One plainly set forth two separate conspiracies—an alleged conspiracy amongst all of the defendants to sell Abreezio and the DFT technology to Qualcomm without disclosing material facts (the "Main Conspiracy"), and a separate purported conspiracy to conceal material facts during the course of the Civil Action and long after the objective of the first conspiracy was achieved (the "Subsequent Conspiracy to Conceal").

### 1. Nature of the Scheme

The specific goals of the two alleged conspiracies are starkly distinct. As alleged, "the ***purpose of the conspiracy***" in this case was to "obtain tens of millions of dollars from [Qualcomm] by selling it valuable DFT technology." Dkt. No. 9 ¶ 14 (emphasis added). Thus, according to the plain language of the allegations, the objective of the alleged conspiracy as pled was achieved on October 30, 2015, when Qualcomm purchased Abreezio and the proceeds were transferred by wire to the defendants. The conspiracy ended when payment was received. The Superseding Indictment contains no allegation that, as part of the original conspiratorial agreement, the parties anticipated that years after the purchase, Qualcomm would file a civil suit and, in that eventuality, the defendants would make efforts to conceal the original conspiracy in response to future unknown discovery requests. It is telling that even with the government's extensive investigative record, it was unable to cite in the Superseding Indictment to any indication that the defendants anticipated and planned all along for future civil litigation. Therefore, the alleged false and fraudulent acts carried out in the Civil Action are not part of the Main Conspiracy but rather are part of the Subsequent Conspiracy to Conceal.

The facts here are like those in *Gordon* where the primary agreement between the defendants was to use inside information to secure government contracts in return for payoffs. *Gordon*, 844 F.2d at 1401. The Ninth Circuit held that later efforts to conceal the crime that were instigated after one of the defendants was subpoenaed by the grand jury were part of a separate conspiracy because "[t]he evidence does not show that the parties contemplated or discussed any plans for a coverup" at the time of the original agreement and "[w]e cannot imply a subsidiary conspiracy to conceal the crime." *Id.* Here, as alleged, the purpose of the original conspiratorial agreement was to conceal material facts *while* selling DFT technology to Qualcomm, and there are no allegations in the Superseding Indictment that indicate that the original conspiratorial agreement included an agreement to conceal the Main Conspiracy after its objective—the sale of Abreezio and the DFT technology to Qualcomm—was complete. Therefore, any alleged efforts to conceal the conspiracy by two of the defendants—not including Mr. Taneja—undertaken later as a result of and during the Civil Action cannot be part of the Main Conspiracy. Instead, these actions are part of the separate Subsequent Conspiracy to Conceal, the object of which was to conceal the Main Conspiracy.

### 2. Commonality of Time

As alleged in the Superseding Indictment, the timing of the manner and means of executing the scheme and the overt acts establishes that Count One charges two separate conspiracies. Qualcomm's purchase of Abreezio and the DFT technology and the related wire transfers—the object of the conspiracy—occurred on October 30, 2015, whereas the later alleged acts of concealment were not carried out until more than two years later in 2018 in response to the Civil Action filed on October 26, 2017.

Here, the break in time between the two conspiracies—more than two years—is more than three times the length of time between the two conspiracies found in *Gordon* and thus supports a finding that Count One charges two conspiracies. 844 F.2d at 1401 (finding that "[t]he commonality of time factor also points to two conspiracies" where the last kickback transaction occurred approximately six months before subsequent

efforts to obstruct the grand jury investigation).

### 3. Identity of Participants and Quality, Frequency, and Duration of Each Conspirator's Transactions

The fact that the Subsequent Conspiracy to Conceal only includes a subset of the defendants indicates that there were two separate conspiracies. *See United States v. Durades*, 607 F.2d 818, 819–20 (9th Cir. 1979) (holding that defendant should not have been charged with participating in a single overall conspiracy where evidence showed two different drug trafficking conspiracies involving different casts of characters except for one man, and although defendant participated in one drug ring, he was not aware of the other).

Here, only Dr. Arabi and Ms. Alan are alleged to have made purportedly false statements and submitted purportedly false evidence in the Civil Action in 2018. There is no allegation that Mr. Taneja or Mr. Shokouhi participated in or even knew about these acts of concealment. Indeed, before the alleged overt acts in 2018, Mr. Taneja was already negotiating a settlement agreement with Qualcomm, and Mr. Shokouhi was never named as a defendant in the Civil Action.

### 4. Commonality of Goals

At the time of the alleged Subsequent Conspiracy to Conceal, the defendants did not share common goals. Mr. Taneja's goals during the Civil Action were completely contrary to and inconsistent with those purportedly held by Dr. Arabi and Ms. Alan. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mr. Taneja began settlement negotiations with Qualcomm in the Civil Action, with an eye towards cooperation, as early as January 4, 2018,[1] and therefore had no need to conceal facts when Dr. Arabi submitted allegedly false discovery responses on January 16, 2018 and

---

[1] The Court may make preliminary findings of fact regarding the settlement negotiations and final settlement in the Civil Action to decide the question of law presented by this Motion because the Court's findings on the Motion will not invade the province of the ultimate finder of fact, who is concerned with the general issue of guilt. *See Shortt Accountancy Corp.*, 785 F.2d at 1452.

Dr. Arabi and Ms. Alan allegedly produced a fraudulent document in response to discovery requests on June 22, 2018. Indeed, Mr. Taneja was no longer part of the Civil Action as of January 26, 2018, and Mr. Shokouhi was never a named defendant in the Civil Action. Thus, it is not surprising that the government fails to make any allegation that Mr. Taneja agreed with Dr. Arabi and Ms. Alan to commit acts of concealment during the Civil Action. Indeed, the government does not even allege that Mr. Taneja communicated with Dr. Arabi and Ms. Alan on any of their discovery submissions (which he did not), much less that they had a joint defense (which they did not). The timing and existence of Mr. Taneja's settlement agreement with Qualcomm conclusively undermines any finding of commonality of goals between the two alleged conspiracies.

***

An evaluation of the factors used to determine whether the allegations included in Count One comprise a single overarching agreement among the conspirators compels the conclusion that Count One actually charges two separate conspiracies—a conspiracy to induce Qualcomm to buy Abreezio and the DFT technology and a separate conspiracy by two defendants—not including Mr. Taneja—to commit acts of concealment during a much later civil litigation. Count One of the Superseding Indictment is thus duplicitous and must be dismissed.

**B.     Count Four Is Duplicitous Because It Alleges Two Separate Schemes**

Count Four of the Superseding Indictment relies entirely on the manner, means, and overt acts alleged in Count One and therefore suffers from the same flaws that render Count One duplicitous. The same arguments and facts that clearly demonstrate that the government alleged two separate conspiracies in Count One apply to Count Four and thus demonstrate that the government alleged two separate schemes in Count Four: a scheme to defraud Qualcomm by selling it technology for millions of dollars while concealing material facts, and a separate scheme purportedly carried about by two defendants—not including Mr. Taneja—to conceal the earlier scheme during civil litigation. These two schemes—performed two years apart—had separate objectives

and participants and therefore must be treated as two distinct schemes that cannot be combined into one count without rendering the count duplicitous.

### IV. CONCLUSION

This case echoes *Grunewald*, in which the Supreme Court refused to "accede to the proposition that the duration of a conspiracy can be indefinitely lengthened merely because the conspiracy is kept a secret, and merely because the conspirators take steps to bury their traces, in order to avoid detection and punishment after the central criminal purpose has been accomplished." 353 U.S. at 405. This Court should not permit the government to subvert the protections and principles that the Supreme Court enshrined in *Grunewald*.

For the reasons set forth above, Defendant Sanjiv Taneja respectfully requests that the Court enter an order pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(i) dismissing Counts One and Four of the Superseding Indictment.

DATED: November 21, 2022

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: s/ Nicola T. Hanna
Nicola T. Hanna

*Attorneys for Sanjiv Taneja*