UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                          Plaintiff,<br><br>     v.<br><br>KARIM ARABI; SHEIDA ALAN, also known as Sheida Arabi; SANJIV TENEJA; ALI AKBAR SHOKOUHI,<br><br>                         Defendants. | Case No. 22-cr-01152-BAS<br><br>**ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS COUNTS OF THE SUPERSEDING INDICTMENT AS DUPLICITOUS**<br><br>**(ECF Nos. 109, 110, 111)** |

## I.   Introduction

The Government alleges that on October 30, 2015, Qualcomm Technologies, Inc. (also referred to as the "Victim Company") entered into a Unit Purchase Agreement ("UPA") to purchase Abreezio, LLC and its Design for Test ("DFT") technology for $150 million. (Superseding Indictment ¶ 11, ECF No. 9.) Unknown to Qualcomm at the time was that Abreezio was formed and developed by one of Qualcomm's employees, Defendant Karim Arabi. (*Id.* ¶ 5.)

According to the Government and undisputed by Defendants: "The UPA provided for payment for Abreezio in two primary phases. First, Qualcomm would pay approximately $150 million in cash on or about October 30, 2015. Second,

Qualcomm would hold back $23,747,735.50 to cover the indemnification obligations of the sellers" until October 30, 2017. (Pilchak Decl. ¶ 3, ECF No. 112-1 (citation omitted).) The holdback funds would be used "to satisfy claims made by Qualcomm for losses," including losses "resulting from or arising out of . . . any misrepresentation made by [Defendants]." (*Id.* ¶ 4.)

These holdback funds became significant during a civil fraud lawsuit filed by Qualcomm against Defendants on October 26, 2017. Qualcomm refused to make the scheduled holdback payments, and Defendant Sheida counterclaimed alleging Qualcomm had wrongfully withheld the holdback funds. (Pilchak Decl. ¶¶ 5, 6.)

Count One of the Indictment charges Defendants with conspiracy to commit wire fraud. Specifically, the Indictment charges Defendants with conspiracy "to knowingly devise a material scheme . . . to defraud and obtain money and property [from Victim Company] by means of materially false and fraudulent pretenses, representations, and promises." (Superseding Indictment ¶ 13.) The purpose of the conspiracy was "to obtain [money] from Victim Company by selling it valuable DFT technology . . . while concealing from Victim Company" that Defendant Karim Arabi, an employee at Qualcomm, had patented and developed that technology. (*Id.* ¶ 14.)

Included in the overt acts are alleged misrepresentations made during the civil lawsuit in 2018, three years after Qualcomm's initial payment made on October 30, 2015. (*Id.* ¶ 16(hh)–(ii).) The Government argues these misrepresentations were made as part of Defendants' continuing attempts to obtain money from Qualcomm, notably the holdback funds, by affirmatively concealing the roles of the various Defendants in Abreezio. (Opp'n 12:1–13:6, ECF No. 112.)

Counts Two through Five detail specific wire fraud transactions, totaling slightly more than $125 million, whereby each Defendant received wire transfers of money from Qualcomm on October 30, 2015. (Superseding Indictment ¶ 20.)

Defendant Sanjiv Taneja now moves to dismiss Counts One and Four of the Superseding Indictment as duplicitous. (ECF No. 109.) Count Four is the wire transaction relevant to Taneja. Defendants Ali Akbar Shokouhi and Karim Arabi join in Taneja's Motion. (ECF Nos. 110, 111.) For the same reasons, they ask the Court to dismiss not only Count One, but also Counts Two, Three, and Five, which are the separate wire transactions relevant to these Defendants. (*Id.*) The Government responds. (ECF No. 112.) The Court heard oral argument on the issue. (ECF No. 113.) For the reasons stated below, the Court **DENIES** the Motions.

## II.  Analysis

The Supreme Court has made it clear that generally a criminal conspiracy and the ensuing cover-up of that conspiracy are two separate conspiracies. Thus, alleging them both in the same count is duplicitous. *Grunewald v. United States*, 353 U.S. 391, 405 (1957). "[A]fter the central criminal purposes of a conspiracy have been attained, a subsidiary conspiracy to conceal may not be implied from circumstantial evidence showing merely that the conspiracy was kept a secret and that the conspirators took care to cover up their crime in order to escape detection and punishment." *Id.* at 401–02. "Acts of covering up, even though done in the context of a mutually understood need for secrecy, cannot themselves constitute proof that concealment of the crime after its commission was part of the initial agreement among the conspirators." *Id.* at 402. Otherwise, the life of a conspiracy would be extended indefinitely, because "every conspiracy is by its very nature secret" and "every conspiracy will inevitably be followed by actions taken to cover the conspirators' traces." *Id.*

Thus, the Supreme Court drew a vital distinction between acts done in furtherance of the main criminal objectives of the conspiracy and acts of concealment done after these central objectives have been accomplished. *Grunewald*, 353 U.S. at 405. As an example, the Supreme Court distinguished between kidnappers concealing their crime while waiting for the ransom, both to keep their crime secret,

but also to gain the money they are seeking, with kidnappers who have abandoned the victim and are now trying merely to escape detection. *Id.*

"[A] duplicity objection can easily be made before trial because a duplicity claim is directed at the *face* of the indictment and not at the evidence presented at trial." *United States v. Gordon*, 844 F.2d 1397, 1400 (9th Cir. 1988). In order to determine whether there is one overall agreement, the court should look at: (1) the nature of the scheme, (2) the identity of participants; (3) the quality, frequency and duration of each conspirator's transactions; and (4) the commonality of times and goals. *Id.*

In this case, the primary goal of the initial conspiracy, as stated on the face of the Indictment, was to "obtain money and property" from Qualcomm by "false and fraudulent pretenses, representations, and promises." (Superseding Indictment ¶ 13.) Specifically, the purpose was to get the entire amount of money contemplated in the UPA entered into on October 30, 2015. (*Id.* ¶¶ 11, 14–16.) Although Defendants received the bulk of the money on that October 30th date, an additional amount of over $23 million was held back for two years. Thus, when Defendants made the allegedly false statements or actions during the ensuing civil lawsuit, according to the Government, they were doing so, not only to avoid detection, but also to get the entirety of the amount they contracted for in the UPA. (*See id.* ¶ 16(hh)–(ii).)

The nature of the scheme was the same: Defendants were attempting to obtain the entire amount of money contracted for in the UPA. The participants were the same. Although Taneja argues he had settled with Qualcomm by the time the alleged misstatements had been made, they were made by the signatories to the UPA and were part of the same scheme to obtain money from Qualcomm by selling Abreezio. Each conspirator involved in the sale of Abreezio was similarly involved in obtaining the money from the sale of Abreezio, including the holdback money. Thus, this case is more akin to that of a kidnapper still holding onto the victim and attempting to obtain the ransom money. Although Defendants in this case had obtained some of

the money, they were allegedly concealing information so that they could receive the rest of the money owed.

Hence, statements made during the civil lawsuit were made in furtherance of the original criminal objective of the conspiracy and not solely for the purposes of concealment of the crime. The original objective was not accomplished until the entire amount of money due under the UPA was paid.

Therefore, the Court **DENIES** Defendants' motions to dismiss the Indictment as duplicitous. That said, the Court denies the motion without prejudice. The Court is relying solely on the allegations in the Indictment and the representations regarding the UPA and civil lawsuit provided by the Government. Therefore, if the facts elicited at trial suggest that the initial goal of the conspiracy was completed on October 30, 2015, and that any statements made in 2018 were not to obtain the holdback money—but solely to hide the fact of the original conspiracy—the Court will entertain renewal of the motion. Furthermore, at trial, the Court may need to give jury instructions and include verdict form questions regarding this issue if factual disputes arise as to the reason for the alleged misstatements made during the civil lawsuit.

### III.   CONCLUSION

For the reasons stated above, Defendants' Motions to Dismiss the Indictment as Duplicitous (ECF Nos. 109, 110, 111) are **DENIED**.

**IT IS SO ORDERED.**

**DATED: December 16, 2022**

Hon. Cynthia Bashant
United States District Judge