```
 1  RANDY S. GROSSMAN
    United States Attorney
 2  NICHOLAS W. PILCHAK
    California Bar No. 331711
 3  JANAKI G. CHOPRA
    California Bar No. 272246
 4  ERIC R. OLAH
    California Bar No. 295513
 5  Assistant U.S. Attorneys
    880 Front Street, Room 6293
 6  San Diego, California 92101
    Telephone: (619) 546-9709
 7  Email: Nicholas.Pilchak@usdoj.gov
 8  Attorneys for the United States
```



UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 22-cr-1152-BAS |
| Plaintiff, | |
| v. | PLEA AGREEMENT |
| SANJIV TANEJA (3), | |
| Defendant. | |

IT IS HEREBY AGREED between Plaintiff, UNITED STATES OF AMERICA, through its counsel, Randy S. Grossman, United States Attorney, and Nicholas W. Pilchak, Janaki G. Chopra, and Eric R. Olah, Assistant U.S. Attorneys, and Defendant, SANJIV TANEJA, with the advice and consent of Nicola Hanna, Winston Chan, Katy Sharp, and Jimmy Rotstein, counsel for Defendant, as follows:

I

**THE PLEA**

Defendant agrees to plead guilty to Count 7 of the Superseding Indictment, charging Defendant with Engaging in Monetary Transactions in Property Derived From Specified Unlawful Activity, in violation of

Def. Initials 

Title 18, United States Code, Section 1957. In addition, Defendant consents to the forfeiture allegations in the Superseding Indictment.

In exchange for entering a plea pursuant to this agreement, the United States agrees to (1) move to dismiss the remaining charges against Defendant without prejudice when Defendant is sentenced, and (2) not prosecute Defendant thereafter on such dismissed charges. The only exceptions are if Defendant breaches the terms of this plea agreement or if Defendant's guilty plea is set aside for any reason. If Defendant breaches this agreement or his guilty plea is set aside, section XII below shall apply.

## II

### NATURE OF THE OFFENSE

**A.   ELEMENTS EXPLAINED**

The offense to which Defendant is pleading guilty has the following elements:

1. The defendant knowingly engaged in a monetary transaction;
2. The defendant knew the transaction involved criminally derived property;
3. The property had a value greater than $10,000;
4. The property was in fact derived from wire fraud, in violation of 18 U.S.C. § 1343; and
5. The transaction occurred in the United States.

In turn, the elements of wire fraud are:

1. The defendant knowingly participated in or devised a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, promises, or omitted facts;
2. The statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;
3. The defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and

2

Def. Initials  ST

4. The defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

B. **ELEMENTS UNDERSTOOD AND ADMITTED - FACTUAL BASIS**

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each of the elements of the crime and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed:

1. In approximately January 2015, Defendant was recruited by co-defendant Karim Arabi ("Karim") to serve as the Chief Executive Officer of Abreezio LLC ("Abreezio"). Thereafter, Defendant participated with Karim, co-defendant Ali Akbar Shokouhi, and others, in a scheme to conceal Karim's role in Abreezio's formation and development from Qualcomm's due diligence personnel, in connection with Abreezio's marketing and sale to Qualcomm for approximately $180 million.

2. Although Abreezio described co-defendant Sheida Alan, aka Sheida Arabi ("Sheida"), as the inventor of its core technologies, Defendant never met Sheida. As far as Defendant knew, Sheida did not participate in technical or strategic decision-making concerning Abreezio at any time. On the other hand, Defendant knew that Karim was intimately involved in Abreezio's formation, development, and marketing.

3. Nevertheless, Defendant agreed with Karim to conceal Karim's involvement in Abreezio from Qualcomm, which was the primary target for Abreezio's ultimate marketing and sale. Defendant knew that Qualcomm was Karim's employer throughout Abreezio's lifespan.

4. As part of this effort, and at Karim's direction, Defendant repeatedly used email accounts bearing Sheida's name (i.e., sheida.arabi1@gmail.com and sheida@abreezio.com) but controlled by Karim to communicate with Karim while making it look like Defendant was communicating with Sheida. Similarly, Defendant would refer to Karim as "Sheida" in emails and text messages with others, including co-defendant Shokouhi, to conceal Karim's involvement in Abreezio strategy and planning discussions.

5. For example, on or about July 30, 2015, Defendant texted Shokouhi: "Quick chat?" Shokouhi responded "On the phone with Sheida." Defendant replied later, "Just spoke with Sheida. Quick chat?" Although the text messages refer to "Sheida," in truth Defendant spoke with Karim, and not Sheida, and simply used the name "Sheida" as part of the scheme to conceal Karim's true role in Abreezio.

3

Def. Initials **ST**
22cr1152-BAS-003

6. On or about February 25, 2015, in anticipation of a meeting with Qualcomm representatives, Defendant texted Karim to ask for help preparing the "quantifiable benefit" portion of Abreezio's pitch, and specifically the "numbers" for Qualcomm's technology so that Abreezio would know the "threshold" it needed to cross with its proffered technology. In making this request, Defendant was asking Karim for technical details about Qualcomm's technology, which were used to improve Qualcomm's view of Abreezio during the marketing process.

7. Defendant admits that, by concealing Karim's role in Abreezio during its marketing and sale to Qualcomm, he participated in a scheme to defraud Qualcomm in connection with its purchase of Abreezio. Defendant further admits that Karim's true role in Abreezio was material to Qualcomm's decision to pay approximately $180 million for the company, and Defendant acted with the intent to defraud in concealing Karim's role from Qualcomm.

8. Following Qualcomm's purchase of Abreezio, Defendant was contacted by Karim on approximately May 22, 2017, after Karim learned that Qualcomm was investigating the transaction. Karim met with Defendant and directed Defendant to delete his emails concerning Abreezio. Although Defendant moved the emails to his trash folder in Karim's presence, he later recovered them and provided them to Qualcomm.

9. Defendant received $10,046,571.82 from Qualcomm as his share of Abreezio's purchase price. On or about July 19, 2018, while in the United States, Defendant wired $1,550,679.70 from his Ally Bank account ending in x8694 to his Ally Bank account ending in x4404, knowing that the transaction involved criminally derived property—specifically, a portion of the proceeds of Defendant's share of the Abreezio purchase price. Defendant expressly admits that the portion of that wire transfer involving money from the Abreezio purchase was over $10,000.00.

## III

## **PENALTIES**

The crime to which Defendant is pleading guilty carries the following penalties:

A.  a maximum of 10 years in prison;

B.  a maximum fine of $250,000 or twice the pecuniary gain or loss;

C.  a mandatory special assessment of $100;

4

Def. Initials ST

22cr1152-BAS-003

D. a term of supervised release of up to 3 years. Failure to comply with any condition of supervised release may result in revocation of supervised release, requiring Defendant to serve in prison, upon revocation, all or part of the statutory maximum term of supervised release;

E. forfeiture of all property, real and personal, involved in the offense and all property traceable to such property; and

F. an order from the Court pursuant to 18 U.S.C. § 3663A that Defendant make mandatory restitution to the victim(s) of the offense of conviction, or the estate(s) of the victims(s). Defendant understands that the Court shall also order, if agreed to by the parties in this plea agreement, restitution to persons other than the victim(s) of the offense of conviction.

IV

**DEFENDANT'S WAIVER OF TRIAL RIGHTS AND UNDERSTANDING OF CONSEQUENCES**

This guilty plea waives Defendant's right at trial to:

A. Continue to plead not guilty and require the Government to prove the elements of the crime beyond a reasonable doubt;

B. A speedy and public trial by jury;

C. The assistance of counsel at all stages;

D. Confront and cross-examine adverse witnesses;

E. Testify and present evidence and to have witnesses testify on behalf of Defendant; and,

F. Not testify or have any adverse inferences drawn from the failure to testify.

Defendant also knowingly and voluntarily waives any rights and defenses defendant may have under the Excessive Fines Clause of the Eighth Amendment to the United States Constitution to the forfeiture of property in this proceeding or any related civil proceeding, and waives the right to assert now or on appeal, any legal, constitutional, statutory, regulatory, and procedural rights and defenses that he may have under any source of federal or common law, including among others, challenges to personal jurisdiction, extraterritoriality, statute of limitations, venue, and the form and substance of the Superseding

Indictment, including specifically any claim of multiplicity or duplicity.

## V
## DEFENDANT ACKNOWLEDGES NO PRETRIAL RIGHT TO BE PROVIDED WITH IMPEACHMENT AND AFFIRMATIVE DEFENSE INFORMATION

Any information establishing the factual innocence of Defendant known to the undersigned prosecutor in this case has been turned over to Defendant. The United States will continue to provide such information establishing the factual innocence of Defendant.

If this case proceeded to trial, the United States would be required to provide impeachment information for its testifying witnesses. In addition, if Defendant raised an affirmative defense, the United States would be required to provide information in its possession that supports such a defense. By pleading guilty Defendant will not be provided this information, if any, and Defendant waives any right to this information. Defendant will not attempt to withdraw the guilty plea or to file a collateral attack based on the existence of this information.

## VI
## DEFENDANT'S REPRESENTATION THAT GUILTY PLEA IS KNOWING AND VOLUNTARY

Defendant represents that:

A. Defendant has had a full opportunity to discuss all the facts and circumstances of this case with defense counsel and has a clear understanding of the charges and the consequences of this plea. By pleading guilty, Defendant may be giving up, and rendered ineligible to receive, valuable government benefits and civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. The conviction in this case may subject Defendant to various collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case; debarment from government contracting; and suspension or revocation of a

        professional license, none of which can serve as grounds to withdraw Defendant's guilty plea.

B.   No one has made any promises or offered any rewards in return for this guilty plea, other than those contained in this agreement or otherwise disclosed to the Court.

C.   No one has threatened Defendant or Defendant's family to induce this guilty plea.

D.   Defendant is pleading guilty because Defendant is guilty and for no other reason.

## VII

### AGREEMENT LIMITED TO U.S. ATTORNEY'S OFFICE SOUTHERN DISTRICT OF CALIFORNIA

This plea agreement is limited to the United States Attorney's Office for the Southern District of California, and cannot bind any other authorities in any type of matter, although the United States will bring this plea agreement to the attention of other authorities if requested by Defendant.

## VIII

### APPLICABILITY OF SENTENCING GUIDELINES

The sentence imposed will be based on the factors set forth in 18 U.S.C. § 3553(a). In imposing the sentence, the sentencing judge must consult the United States Sentencing Guidelines (Guidelines) and take them into account. Defendant has discussed the Guidelines with defense counsel and understands that the Guidelines are only advisory, not mandatory. The Court may impose a sentence more severe or less severe than otherwise applicable under the Guidelines, up to the maximum in the statute of conviction. The sentence cannot be determined until a **presentence report** is prepared by the U.S. Probation Office and defense counsel and the United States have an opportunity to review and challenge the presentence report. Defendant agrees to request that presentence report be prepared. Nothing in this plea agreement limits

7

Def. Initials **ST**

22cr1152-BAS-003

the United States' duty to provide complete and accurate facts to the district court and the U.S. Probation Office.

## IX

### SENTENCE IS WITHIN SOLE DISCRETION OF JUDGE

This plea agreement is made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). The sentence is within the sole discretion of the sentencing judge who may impose the maximum sentence provided by statute. It is uncertain at this time what Defendant's sentence will be. The United States has not made and will not make any representation about what sentence Defendant will receive. Any estimate of the probable sentence by defense counsel is not a promise and is not binding on the Court. Any recommendation by the United States at sentencing also is not binding on the Court. If the sentencing judge does not follow any of the parties' sentencing recommendations, Defendant will not withdraw the plea.

## X

### PARTIES' SENTENCING RECOMMENDATIONS

A. **SENTENCING GUIDELINE CALCULATIONS**

Although the Guidelines are only advisory and just one factor the Court will consider under 18 U.S.C. § 3553(a) in imposing a sentence, the parties will jointly recommend the following Base Offense Level, Specific Offense Characteristics, Adjustments, and Departures:

|   |    |                                                           |     |
|---|----|-----------------------------------------------------------|-----|
| 1 | 1. | Base Offense Level, §§ 2S1.1(a)(1)/2B1.1(a)(2)            | 6   |
| 2 | 2. | Loss >$9.5 million, § 2B1.1(b)(1)(K)                      | +20 |
| 3 | 3. | Violation of § 1957, § 2S1.1(b)(2)(A)                     | +1  |
| 4 | 4. | Acceptance of Responsibility, §§ 3E1.1(a)/(b)             | -3  |
| 5 | 5. | Combination of Circumstances, § 5K2.0                     | -2  |

The parties agree to jointly recommend the departure for combination of circumstances based on the Defendant's provision of information to Qualcomm as part of its private investigation and civil lawsuit concerning the conduct at issue in this case.

B. **ACCEPTANCE OF RESPONSIBILITY**

Despite paragraph A above, the United States need not recommend an adjustment for Acceptance of Responsibility if Defendant engages in conduct inconsistent with acceptance of responsibility including, but not limited to, the following:

1. Fails to truthfully admit a complete factual basis as stated in the plea at the time the plea is entered, or falsely denies, or makes a statement inconsistent with, the factual basis set forth in this agreement;
2. Falsely denies prior criminal conduct or convictions;
3. Is untruthful with the United States, the Court or probation officer;
4. Breaches this plea agreement in any way; or
5. Transfers or conceals property (or properties) that would otherwise be available for payment of restitution.

C. **FURTHER ADJUSTMENTS AND SENTENCE REDUCTIONS INCLUDING THOSE UNDER 18 U.S.C. § 3553**

Defendant may recommend additional downward adjustments, departures, including Criminal History departures under USSG § 4A1.3, or sentence reductions under 18 U.S.C. § 3553. The United States will oppose any such adjustments or departures not set out above.

9

Def. Initials ST
22cr1152-BAS-003

D. **NO AGREEMENT AS TO CRIMINAL HISTORY CATEGORY**

The parties have no agreement as to Defendant's Criminal History Category.

E. **"FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION**

The facts in the "factual basis" paragraph of this agreement are true and may be considered as "relevant conduct" under USSG § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1), as reflected in the jointly recommended Guidelines calculations set forth in Section X, paragraph A above.

F. **PARTIES' RECOMMENDATIONS REGARDING CUSTODY**

The United States will recommend that Defendant be sentenced at the low end of the advisory Guidelines range as calculated by the United States at the time of sentencing.

G. **SPECIAL ASSESSMENT /FINE /FORFEITURE /RESTITUTION**

1. **Special Assessment**

The parties will jointly recommend that defendant pay a special assessment in the amount of $100.00 per felony count of conviction to be paid forthwith at time of sentencing. Defendant shall pay the special assessment through the office of the Clerk of the District Court by bank or cashier's check or money order made payable to the "Clerk, United States District Court."

2. **Fine**

In light of the forfeiture and restitution to be imposed, the parties will jointly recommend that the Court not impose a fine.

3. **Forfeiture & Restitution**

Defendant consents to the forfeiture allegations of the Superseding Indictment and consents to the forfeiture of all property seized in connection with this case. The parties agree that forfeiture

10

Def. Initials ST
22cr1152-BAS-003

and restitution shall be governed by the provisions of the attached financial addendum.

**H.  SUPERVISED RELEASE**

If the Court imposes a term of supervised release, Defendant agrees that he will not later seek to reduce or terminate early the term of supervised release until he has served at least 2/3 of his term of supervised release or probation and has fully paid and satisfied any special assessments, fine, criminal forfeiture judgment and restitution judgment imposed by the Court.

**XI**

**DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK**

Defendant waives (gives up) all rights to appeal and to collaterally attack every aspect of the conviction and sentence. This waiver includes, but is not limited to, any argument that the statute of conviction or Defendant's prosecution is unconstitutional and any argument that the facts of this case do not constitute the crime charged. The only exception is Defendant may collaterally attack the conviction or sentence on the basis that Defendant received ineffective assistance of counsel.

**XII**

**BREACH OF THE PLEA AGREEMENT**

Defendant and Defendant's attorney know the terms of this agreement and shall raise, before the sentencing hearing is complete, any claim that the United States has not complied with this agreement. Otherwise, such claims shall be deemed waived (that is, deliberately not raised despite awareness that the claim could be raised), cannot later be made to any court, and if later made to a court, shall constitute a breach of this agreement.

Defendant breaches this agreement if Defendant violates or fails to perform any obligation under this agreement. The following are non-exhaustive examples of acts constituting a breach:

1. Failing to plead guilty pursuant to this agreement;
2. Failing to fully accept responsibility as established in Section X, paragraph B, above;
3. Failing to appear in court;
4. Attempting to withdraw the plea;
5. Failing to abide by any court order related to this case;
6. Appealing (which occurs if a notice of appeal is filed) or collaterally attacking the conviction or sentence in violation of Section XI of this plea agreement; or
7. Engaging in additional criminal conduct from the time of arrest until the time of sentencing.

If Defendant breaches this plea agreement, Defendant will not be able to enforce any provisions, and the United States will be relieved of all its obligations under this plea agreement. For example, the United States may proceed to sentencing but recommend a different sentence than what it agreed to recommend above. Or the United States may pursue any charges including those that were dismissed, promised to be dismissed, or not filed as a result of this agreement (Defendant agrees that any statute of limitations relating to such charges is tolled indefinitely as of the date all parties have signed this agreement; Defendant also waives any double jeopardy defense to such charges). In addition, the United States may move to set aside Defendant's guilty plea. Defendant may not withdraw the guilty plea based on the United States' pursuit of remedies for Defendant's breach.

Additionally, if Defendant breaches this plea agreement: (i) any statements made by Defendant, under oath, at the guilty plea hearing

12

Def. Initials **ST**

22cr1152-BAS-003

(before either a Magistrate Judge or a District Judge); (ii) the factual basis statement in Section II.B in this agreement; and (iii) any evidence derived from such statements, are admissible against Defendant in any prosecution of, or any action against, Defendant. This includes the prosecution of the charge that is the subject of this plea agreement or any charge(s) that the United States agreed to dismiss or not file as part of this agreement, but later pursues because of a breach by the Defendant. Additionally, Defendant knowingly, voluntarily, and intelligently waives any argument that the statements and any evidence derived from the statements should be suppressed, cannot be used by the United States, or are inadmissible under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, and any other federal rule.

### XIII

### CONTENTS AND MODIFICATION OF AGREEMENT

This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral. No modification of this plea agreement shall be effective unless in writing signed by all parties.

### XIV

### DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT

By signing this agreement, Defendant certifies that Defendant has read it (or that it has been read to Defendant in Defendant's native language). Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

Def. Initials ST
22cr1152-BAS-003

XV

DEFENDANT SATISFIED WITH COUNSEL

Defendant has consulted with counsel and is satisfied with counsel's representation. This is Defendant's independent opinion, and Defendant's counsel did not advise Defendant about what to say in this regard.

RANDY S. GROSSMAN
United States Attorney

July 28, 2023        *Eric R. Olah*
DATED                NICHOLAS W. PILCHAK
                     JANAKI G. CHOPRA
                     ERIC R. OLAH
                     Assistant U.S. Attorneys

7/28/23
DATED                NICOLA HANNA
                     WINSTON CHAN
                     KATY SHARP
                     JIMMY ROTSTEIN
                     Counsel for Defendant

IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR UNDER PENALTY OF PERJURY THAT THE FACTS IN THE "FACTUAL BASIS" SECTION ABOVE ARE TRUE.

7/28/23
DATED                SANJIV TANEJA
                     Defendant

Approved By:

/s/ Mark Conover for
Victor P. White
Assistant U.S. Attorney

14

Def. Initials ST

22cr1152-BAS-003